**NATIONAL INVESTORS FIRE AND CASUALTY INSURANCE COMPANY, a corporation, Appellant,**

**v.**

**PACIFIC INDEMNITY COMPANY, a corporation, and W. Miles Blevins, Jr., and Helen Blevins, Appellees.**

**W. Miles BLEVINS, Jr., and Helen Blevins, Appellants,**

**v.**

**PACIFIC INDEMNITY COMPANY, a corporation, and National Investors Fire and Casualty Insurance Company, a corporation, Appellees.**

**Nos. 8184, 8185.**

United States Court of Appeals Tenth Circuit.

March 29, 1966.

Rehearing Denied April 20, 1966.

Clayton B. Pierce, of Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, Okl., for National Investors Fire and Cas. Ins. Co.

Frank Gibbard, Sulphur, Okl., for W. Miles Blevins, Jr. and Helen Blevins.

Robert D. Looney, Oklahoma City, Okl., for Pacific Indemnity Co.

Before PICKETT and SETH, Circuit Judges, and CHRISTENSEN, District Judge.

PICKETT, Circuit Judge.

This diversity action was brought by W. Miles Blevins, Jr. and his wife Helen Blevins, Oklahoma residents, against Pacific Indemnity Company and National Investors Fire and Casualty Insurance Company for recovery of proceeds under fire insurance policies. The cause was tried to the court, and a judgment was entered only against National for the amount of the loss. National appeals, contending that the court erred in finding that it had a contract in effect at the time of the loss, but that if it were in effect, Pacific, which also had a policy covering the insured property, should share in the liability. Blevins appeals also, contending that he was entitled to a judgment against Pacific as well for the amount of its policy.

There is no material dispute in the facts. On August 17, 1959, Blevins secured a 5-year homeowner's fire insurance policy with Pacific. On August 20, 1963, due to an increase in the value of the insured property, Blevins, desiring increased coverage, signed an application for a 3-year homeowner's fire insurance policy with National. The first year's premium was paid by check in the amount of $98.00, which was endorsed and deposited to the account of National. While no formal binder was issued, the record shows that the National agent represented to Blevins that coverage was effective at the time the application was signed and the premium paid. Blevins thereupon requested his insurance agent to cancel the Pacific policy, and pursuant to this request, the agent attempted to secure the policy from the First National Bank of Sulphur, Oklahoma, which, as mortgagee, was holding the policy by virtue of a standard "loss payable" clause in its favor. The bank, however, refused to surrender the Pacific policy until such time as it was actually furnished

the National policy as a replacement. The National policy was never delivered, and on September 10, 1963, the insured property was destroyed by fire, with a stipulated loss of $17,270.00. One week later, National wrote Blevins advising him that his application for fire insurance had been denied, and enclosed a check for $98.00 as a refund for the premium theretofore paid by Blevins. This check was neither accepted nor cashed by Blevins.

In the trial court the insurance companies denied that their respective policies were in force on the date of the fire. Blevins asserted that they were both in force. The Pacific policy insured the property for $12,000.00, while the National policy was adequate to cover the entire loss. The trial court concluded that "There existed between plaintiff William Miles Blevins and National Investors Fire and Casualty Insurance Company a contract of insurance which was in full force and effect on the date of the loss, and that said company is liable to the plaintiffs for such loss." These appeals involve a determination of whether the policies were in effect at the time of the fire, and if both were effective, the manner in which the loss should be allocated.

■ We first consider whether the Pacific policy was in force at the time of the fire. The specific question, of course, is whether there ever was an effective cancellation of the Pacific policy, which provides in part that "This policy shall be cancelled at any time at the request of the insured * * *." The evidence discloses that upon the mortgagee-bank's refusal to surrender the Pacific policy, Blevins and his insurance agent agreed to delay cancellation of the Pacific coverage pending actual receipt of the National policy. Blevins testified that the agent advised that "We leave it in effect until we get the policy, you get the other policy." The agent himself testified that he called Blevins and told him that "we would leave it in effect." There was evidence that Blevins continued to pay the premium on the Pacific policy,

that his agent neither notified Pacific of the situation nor took steps toward cancellation of the policy, and that Pacific likewise took no apparent action toward cancellation of the policy. The undisputed evidence shows that there was no manifestation of purpose to effect an immediate termination of the Pacific coverage. Cf. Victory Ins. Co. v. Schroeder, 167 Okl. 516, 30 P.2d 894. While Blevins did not desire double coverage on his property, it nevertheless was his intention that the Pacific policy should not be cancelled until the National policy was delivered to the bank.

As to the National policy, it is conceded by National that "the agent had the general authority to bind the company and upon the taking of the application he has that authority to bind the company or to issue a binder." Blevins then testified that the National agent represented that he was "completely covered" with the signing of the application and payment of premium on August 20, 1963, and that the coverage was reaffirmed on August 29, 1963. The National agent himself testified that he had thus bound his company: "Q. In other words, you told them that you had the authority to bind and that they were covered as of that moment? A. Yes." Inasmuch as there is nothing in the record to indicate affirmatively that National's coverage was conditioned upon actual cancellation of Pacific's policy, we have no difficulty in concluding from the foregoing evidence that there was an effective oral binder and that consequently the National coverage was in force at the time of the fire.

"(I)t has long been the law in Oklahoma that where a fire insurance company appoints a policy writing agent for the company, that agent may bind the company by oral contracts of insurance and the liability of the company attaches under such an oral contract without the issuance and delivery of a policy." Glens Falls Ins. Co. v. Johnson, Okl., 403 P.2d 229, 232–233. See, also, 36 O.S.A. § 3622.

Blevins apparently never intended to maintain both policies concurrently. Nevertheless, under the circumstances peculiar to this case, we conclude that both companies had valid and subsisting fire insurance policies in effect at the time of the loss. Therefore, in accordance with the appropriate provisions in the respective policies, and the general rule applicable where more than one policy of insurance covers a certain risk, and no priority is provided for, the loss will be apportioned between the insurance companies on a prorata basis. Baltimore American Ins. Co. v. Hoover, 205 Okl. 697, 240 P.2d 744; 45 C.J.S. Insurance § 922c.

Reversed and remanded with instructions to enter judgment accordingly.